UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT WOODS,

Plaintiff,

-against-

WESTCHESTER COUNTY D.O.C.; WESTCHESTER COUNTY; CORRECTION OFFICER WILLIAMS #1052,

Defendants.

1:23-CV-10884 (LTS)

ORDER OF DISMISSAL

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Robert Woods, who is currently held in the Hudson County Correctional Facility, in Kearny, New Jersey, filed this *pro se* action seeking damages. He sues: (1) the Westchester County Department of Correction ("WCDOC"); (2) the County of Westchester; and (3) WCDOC Correction Officer Williams. The Court construes Plaintiff's complaint as asserting claims of federal constitutional violations under 42 U.S.C. § 1983, under the court's federal question jurisdiction, as well as claims under state law, under the court's diversity jurisdiction or supplemental jurisdiction.

By order dated January 23, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees.[1] The Court dismisses this action for the reasons set forth in this order, but the Court grants Plaintiff 30 days' leave to replead his claims in an amended complaint.

---

[1] Prisoners are not exempt from paying the full filing fee, even when they have been granted permission to proceed IFP. *See* 28 U.S.C. § 1915(b)(1).

## STANDARD OF REVIEW

The Prison Litigation Reform Act requires that federal courts screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). The Court must also dismiss a complaint if the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After

separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

**BACKGROUND**

Plaintiff alleges that, on September 17, 2022, while he was held in the Westchester County Jail ("WCJ"), he had an assigned job delivering food trays to WCJ housing units. He also alleges that, on that date, he "was going to deliver food trays to the A-Block housing unit," where Correction Officer Williams "control[ed] the sally port doors from the control bubble in front of the housing units." (ECF 1, at 1.) Plaintiff further alleges that Williams "opened the sally port door in the corridor leading to A, B and C Blocks." (*Id.*) "As [Plaintiff] walked through the sally port door with the food trays in [his] hands in front of [him], . . . Williams . . . pressed the control button to close the sally port door before [Plaintiff] was fully through the door." (*Id.*) Plaintiff states that this "made [him] try to back up out of harm['s] way while the door was closing." (*Id.*) He also alleges that, "as [he] was trying to back out of the way of the closing door[,] [his] hands got smashed in the door with the food trays in between them. [His] hands [were] held in between the door for approximately five seconds before the door opened back up." (*Id.*)

Plaintiff asserts that he "was then sent to the [WCJ's] medical area for evaluation of [his] hands[,] which resulted in [him] going to Westchester Medical Emergency Center for further treatment." (*Id.*) He states that he "was treated for a hand contusion to [his] right and domin[a]nt hand. As a result of this injury[,] [he] was not able to work out or play any sports for four months." (*Id.* at 2.) Plaintiff also states that he is "still . . . going to physical therapy for the pain, numbness and to get [his] strength back in [his] right hand." (*Id.*)

## DISCUSSION

### A. Claims against the WCDOC and the County of Westchester

The WCDOC, an agency of the County of Westchester, is not properly named as a party to this action; the Court therefore dismisses Plaintiff's claims against the WCDOC for failure to state a claim on which relief may be granted. *See* 28 U.S.C. 1915(e)(2)(B)(ii). Claims concerning the WCDOC must be brought against the County of Westchester. *See Omnipoint Commc'ns, Inc. v. Town of LaGrange*, 658 F. Supp. 2d 539, 552 (S.D.N.Y. 2009) ("In New York, agencies of a municipality are not suable entities."); *Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *see also* N.Y. Gen. Mun. Law § 2 ("The term 'municipal corporation,' as used in this chapter, includes only a county, town, city and village."). In light of Plaintiff's *pro se* status, however, the Court construes the complaint as asserting claims, under 42 U.S.C. § 1983, against the proper municipal defendant, the County of Westchester, which is already a named defendant.

When a plaintiff sues a municipality, such as the County of Westchester, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused a violation of the plaintiff's rights. *See Connick v. Thompson,* 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). Thus, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice; and (2) that the policy, custom, or practice

caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997) (internal citations omitted).

In his complaint, Plaintiff does not include any facts suggesting that a policy, custom, or practice of the County of Westchester caused a violation of his federal constitutional rights. The Court therefore dismisses Plaintiff's claims under Section 1983 against the County of Westchester for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead those claims in an amended complaint in which he alleges facts sufficient to state a claim under Section 1983 against the County of Westchester.

**B. Claim under 42 U.S.C. § 1983 against Correction Officer Williams**

**1. Conditions-of-confinement claim**

The Court understands Plaintiff's complaint as asserting a claim, under Section 1983, against Correction Officer Williams, arising from Plaintiff's conditions of confinement while Plaintiff was held in the WCJ; specifically, when, on September 17, 2022, Williams allegedly closed a WCJ sally port door on Plaintiff's hands. Plaintiff does not specify, however, whether he was a pretrial detainee or a convicted prisoner at the time that he was held in the WCJ. His custody status is important because, if he was a pretrial detainee, this claim arises under the Due Process Clause of the Fourteenth Amendment; if he was a convicted prisoner, this claim arises under the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979); *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Regardless of whether Plaintiff was a pretrial detainee or convicted prisoner, he must satisfy the following two elements to state a conditions-of-confinement claim under Section 1983: (1) an "objective" element, which requires a showing that the challenged conditions of confinement were

sufficiently serious, and (2) a "subjective" or "mental" element, which requires a showing that the defendant correction official acted with at least deliberate indifference to the challenged conditions. *Darnell*, 849 F.3d at 29-33.

The objective element of a conditions-of-confinement claim is the same for pretrial detainees and convicted prisoners – "the inmate must show that the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health" or safety, which "includes the risk of serious damage to 'physical and mental soundness.'" *Id.* at 30 (quoting *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013), and *LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972)); *see also Farmer v. Brennan*, 511 U.S. 825, 828 (1994) ("A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment."). "[P]rison [or jail] officials violate the Constitution when they deprive an inmate of his basic human needs such as food, clothing, medical care, and safe and sanitary living conditions." *Walker*, 717 F.3d at 125 (internal quotation marks and citation omitted).

The second element – the "subjective" or "mental" element – varies depending on whether the plaintiff was a pretrial detainee or convicted prisoner at the time of the alleged events. A convicted prisoner must allege that a correction official "'kn[e]w[] of and disregard[ed] an excessive risk to inmate health or safety; the official must [have been] both . . . aware of facts from which the inference could [have] be[en] drawn that a substantial risk of serious harm exist[ed], and he must also [have] draw[n] the inference.'" *Darnell*, 849 F.3d at 32 (quoting *Farmer*, 511 U.S. at 837). A pretrial detainee must allege that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to

health or safety." *Id.* at 35. The mere negligence of an official is not a basis for a claim of a federal constitutional violation under Section 1983. *See Daniels v. Williams*, 474 U.S. 327, 335-36 (1986); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986).

Plaintiff does not allege whether he was a pretrial detainee or a convicted prisoner while he was held in the WCJ. In addition, even if the Court were to conclude, for the purposes of this order, that Plaintiff's allegations satisfy the objective element of an Eighth Amendment or Fourteenth Amendment conditions-of-confinement claim under Section 1983, Plaintiff has alleged no facts showing, under either applicable standard, that Williams was at least deliberately indifferent to a risk of serious injury to Plaintiff when Williams allegedly closed the sally port door on Plaintiff's hands. Specifically, to the extent that Plaintiff was a convicted prisoner at the time of the alleged incident, Plaintiff does not show that Williams knew of and disregarded an excessive risk to Plaintiff's health or safety when Williams closed the sally port door on Plaintiff's hands; Plaintiff does not show that Williams was both aware of facts from which the inference could have been drawn that a substantial risk of serious harm to Plaintiff existed when Williams closed the sally port door on Plaintiff's hands, and that Willaims drew that inference. Alternatively, to the extent that Plaintiff was a pretrial detainee at the time of the alleged incident, Plaintiff does not show that Williams acted intentionally to close the sally port door on Plaintiff's hands, or recklessly failed to act with reasonable care to mitigate the risk of closing the sally port door on Plaintiff's hands, even though Williams knew, or should have known, that closing the sally port door, at that time, posed an excessive risk to Plaintiff's health or safety. The Court therefore dismisses this conditions-of-confinement claim, asserted under Section 1983, against Williams, for failure to state a claim on which relief may be granted. *See*

§ 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead this claim in an amended complaint in which he alleges facts sufficient to state such a claim against Williams.

**2. Excessive force claim**

The Court alternatively understands Plaintiff's complaint as asserting a claim of excessive force, under Section 1983, against Williams, arising from when he allegedly closed the sally port door on Plaintiff's hands. As with the abovementioned conditions-of-confinement claim, a pretrial detainee's claim of excessive force under Section 1983 falls under the due process protections of the Fourteenth Amendment. *See Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018). For a pretrial detainee to state such a claim, he must allege facts showing that a correction official engaged in an "exercise of power without any reasonable justification in the service of a legitimate government objective." *Id.* (citation omitted); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015) (noting that a pretrial detainee asserting a claim of excessive force must show only that the force used against him was objectively unreasonable, and that he is not required to prove the defendant's subjective intent, as is required for such a claim brought by a convicted prisoner).

A convicted prisoner's claim of excessive force under Section 1983 falls under the Eighth Amendment's protections against cruel and unusual punishment. *See Kingsley*, 576 U.S. at 400-01; *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009). A correction official's use of force on a convicted prisoner violates the Eighth Amendment when, objectively, "the alleged punishment [was] . . . sufficiently serious," and, subjectively, the official had "a sufficiently culpable state of mind." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (internal quotation marks and citation omitted). The objective component "focuses on the harm done, in light of contemporary standards of decency," and thus, "[i]n assessing this component, the court must ask whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation."

*Wright*, 554 F.3d at 268 (internal quotation marks and citations omitted). In this context, the protections of the Eighth Amendment "do[] not extend to *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* at 269 (internal quotation marks and citation omitted).

The subjective component of such a claim "requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct." *Harris v. Miller*, 818 F.3d 49, 63 (2d Cir. 2016) (internal quotation marks and citation omitted). "The test for wantonness is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (internal quotation marks and citation omitted).

As discussed above, Plaintiff does not state whether he was a pretrial detainee or a convicted prisoner at the time when he was held in the WCJ. Thus, it is unclear whether the applicable pleading standard for Plaintiff's claim of excessive force is the Fourteenth Amendment standard (for a pretrial detainee) or the Eighth Amendment standard (for a convicted prisoner). Under either pleading standard, however, Plaintiff fails to state a claim. As to the Fourteenth Amendment standard, Plaintiff does not allege any facts showing that Williams, in allegedly closing the sally port door on Plaintiff's hands, exercised power without any reasonable justification in the service of a legitimate government objective. With respect to the Eighth Amendment standard, Plaintiff does not allege any facts showing that, even if the injury that Plaintiff sustained was sufficiently serious, Williams's alleged closure of the sally port door on Plaintiff's hands was wanton. Thus, the Court also dismisses this claim for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), but, as above, grants Plaintiff leave to

replead this claim in an amended complaint in which he alleges facts sufficient to state such a claim under the applicable standard.

### C. Claims under state law

Plaintiff may be asserting additional or alternative claims under state law arising from the events alleged above. For this reason, the Court will examine whether it can consider such claims under its diversity jurisdiction or its supplemental jurisdiction.

#### 1. Diversity jurisdiction

The original subject matter jurisdiction of the federal district courts is limited and is set forth generally in 28 U.S.C. §§ 1331 and 1332. Under these statutes, a federal district court has original subject matter jurisdiction only when a "federal question" is presented or, if the plaintiff is asserting claims under state law under the court's diversity jurisdiction, when the plaintiff and the defendants are citizens of different States and the amount in controversy exceeds the sum or value of $75,000. "'[I]t is common ground that in our federal system of limited jurisdiction any party or the court sua sponte, at any stage of the proceedings, may raise the question of whether the court has subject matter jurisdiction.'" *United Food & Com. Workers Union, Loc. 919, AFL-CIO v. CenterMark Prop. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994) (quoting *Manway Constr. Co., Inc. v. Hous. Auth. of the City of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983)); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative.").

To establish the court's diversity jurisdiction, a plaintiff must first show that he and the defendants are citizens of different States. *See* 28 U.S.C. § 1332(a)(1); *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) ("A case falls within the federal district court's 'original'

diversity 'jurisdiction' only if diversity of citizenship among the parties is complete, *i.e.,* only if there is no plaintiff and no defendant who are citizens of the same State."). For diversity purposes, an individual is a citizen of the State where he or she is domiciled, which is defined as the place where a person "has his [or her] true fixed home . . . and to which, whenever he [or she] is absent, he [or she] has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (internal quotation marks and citation omitted). An individual "has but one domicile." *Id.* There is a rebuttable presumption that an inmate retains his or her pre-incarceration domicile. *Blumatte v. Quinn*, 521 F. Supp. 2d 308, 312 n.3 (S.D.N.Y. 2007); *see Housand v. Heiman*, 594 F.2d 923, 925 n. 5 (2d Cir. 1979). In addition, for diversity purposes, a corporation is a citizen "of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is its "nerve center," usually its main headquarters).

The plaintiff must also allege to a "reasonable probability" that his or her claims under state law are in excess of the sum or value of $75,000, the statutory jurisdictional amount. *See* § 1332(a); *Colavito v. N.Y. Organ Donor Network, Inc.*, 438 F.3d 214, 221 (2d Cir. 2006) (citation and internal quotation marks omitted). "[N]ominal damages cannot survive the amount in controversy requirement for purposes of diversity jurisdiction." *Snowbridge Advisors LLC v. ESO Capital Partners UK LLP*, No. 21-CV-9086 (JSR), 2022 WL 1093194, at *6 (S.D.N.Y. Apr. 11, 2022), *aff'd sub nom.*, *Snowbridge Advisors LLC v. Soho Square Cap. LLP*, Nos. 22-1054, 22-1069, 2023 WL 8368630 (2d Cir. Dec. 4, 2023) (summary order).

While it is obvious that the County of Westchester, a municipal corporation, is a citizen of the State of New York, Plaintiff, who is currently held in a jail in New Jersey, does not specify

his own and Correction Officer Williams's state citizenships. Thus, he does not allege facts showing that the parties are diverse. In addition, Plaintiff seems to seek only $50,000 in compensatory damages and $1.00 in nominal damages. (ECF 1, at 2.) He, therefore, does not allege facts sufficient to show that his claims under state law are in excess of the sum or value of $75,000, the statutory jurisdictional amount to invoke this court's diversity jurisdiction. Thus, to the extent that Plaintiff asserts any remaining claims under state law under the Court's diversity jurisdiction, the Court dismisses those claims for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). The Court, however, grants Plaintiff leave to replead any claims that he may assert under state law in an amended complaint in which he alleges facts sufficient to show that the Court has diversity jurisdiction of those claims; he must show that he and defendants are not citizens of the same State and that his claims under state law exceed the sum or value of $75,000, not including nominal damages.

**2. Supplemental jurisdiction**

A federal district court may decline to exercise supplemental jurisdiction of claims under state law when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted). In addition, "[i]n the absence of diversity jurisdiction, because the Court has dismissed the federal claims brought in this action, it may decline to exercise supplemental jurisdiction pursuant to . . . [Section] 1367(c)(3)." *Golub v. Berdon LLP*, No. 19-CV-10309 (JGK), 2021 WL 637974, at *5 (S.D.N.Y. Feb. 17, 2021). Having dismissed those of Plaintiff's claims of which the Court has original subject matter jurisdiction, the Court declines to exercise its supplemental jurisdiction of

any of his claims under state law.[2] *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997))).

**CONCLUSION**

The Court dismisses this action for the reasons set forth above. The Court, however, grants Plaintiff 30 days' leave to replead his claims in an amended complaint, as specified in this order. If Plaintiff fails to file an amended complaint within the time allowed, and cannot show good cause to excuse such failure, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

---

[2] If Plaintiff files an amended complaint asserting claims under federal law, including claims under Section 1983, under the court's original federal question jurisdiction, as well as claims under state law, under the court's supplement jurisdiction, and if the Court subsequently dismisses all of his claims under federal law, the Court will then decline to consider, under its supplemental jurisdiction, his claims under state law. *See* § 1367(c)(3). The Court cannot, however, decline to consider claims under state law if it has original diversity jurisdiction to consider those claims. *See* § 1332(a).

The Court directs the Clerk of Court not to enter a judgment dismissing this action, at this time, as the Court has granted Plaintiff leave to replead his claims in an amended complaint.

SO ORDERED.

Dated: February 26, 2024
New York, New York

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge